**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIELLE SMITH,** | : | **CIVIL ACTION NO. 1:25-CV-705** |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| **v.** | : | |
| | : | |
| **RELIANCE STANDARD LIFE INSURANCE COMPANY,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Reliance Standard Life Insurance Company ("Reliance") terminated Danielle Smith's long-term disability benefits after concluding that she was no longer "Totally Disabled" within the meaning of her disability insurance policy. Smith now challenges that determination under the Employee Retirement Income Security Act of 1974 ("ERISA"). The parties have filed cross-motions for summary judgment, both of which have been fully briefed.

Because a genuine dispute of material fact exists about whether Smith remains "Totally Disabled" within the meaning of the policy, neither party is entitled to judgment as a matter of law. Accordingly, the court will deny both motions, and the case will proceed to a bench trial under Federal Rule of Civil Procedure 52.

## I. Factual Background & Procedural History[1]

Before claiming disability, Smith worked as a Sales & Marketing Support Specialist for Cross Keys Village. (Doc. 20 ¶ 3). She was insured under a group long-term disability policy issued by Reliance to Church of the Brethren Benefit Trust, Inc. (Doc. 17-1 ¶ I.2). The policy defines "Totally Disabled" and "Total Disability" as follows:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness: (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation; . . .
>
> (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.
>
> (AR10).

Smith was injured in a motor vehicle accident on August 3, 2016. (Doc. 17-1 ¶ II.1). She stopped working that month after reporting headaches, shoulder and neck pain, and unsteadiness. (Id.; Doc. 20 ¶ 6). Reliance classified her occupation as sedentary and approved her claim for long-term disability benefits beginning November 3, 2016. (Doc. 20 ¶¶ 7-10).

---

[1] The following facts come from the parties' statements of material facts (Docs. 17-1; 20) accompanying their summary judgment motions and from the Administrative Record ("AR") submitted to the court. (Docs. 20-1; 20-2; 20-3). While the parties raise disputes and denials to their opponent's statement of material facts, those disputes and denials concern the weight to be given to certain evidence or the proper interpretation of that evidence.

Smith attempted to return to work part-time from April through November 2017. (Doc. 17-1 ¶ II.3). Her employer could not accommodate her recommended hours, and her treating physician, Dr. Raymond Ruberg, advised her to stop working. (Id.). From 2017 through 2023, Reliance periodically reviewed Smith's eligibility for benefits. (AR119-126). In August 2018, Reliance's clinical staff concluded that Smith's chronic pain and visual complaints continued to support disability under the policy's "Any Occupation" definition. (Doc. 20 ¶¶ 22, 23). In September 2021, the Social Security Administration also determined that Smith was disabled, with an onset date of August 14, 2019. (AR3345-49).

Dr. Ruberg continued to treat Smith for conditions including post-concussion syndrome, cognitive impairment, muscle spasm, headaches, and unsteadiness. (Doc. 17-1 ¶ II.4). In February 2023, he completed a physical capabilities questionnaire limiting Smith to occasional sitting, standing, walking, and bilateral hand use. (AR3378-79). He determined she was capable of sedentary-level work. (Id.)

Later that year, Dr. Ruberg's reports indicated Smith had greater functional ability. In an October 2023 questionnaire, Dr. Ruberg noted Smith could sit continuously, stand and walk occasionally, perform certain functions with her dominant hand frequently but only occasionally use her left hand for any purpose, and lift at the light exertional level. (AR3386-89). However, he limited her computer use to fifteen-minute intervals and noted that she "may work only 4 hours per day as tolerated." (AR3387).

Reliance's clinical staff reviewed Smith's updated medical records in November 2023. The reviewer noted that it was "unclear what would preclude [Smith] from performing her own sedentary occupation part-time" and concluded that Smith appeared to have "improved greatly since the last clinical review." (AR124).

Reliance reviewed Smith's medical records again in December 2023. (AR126). The reviewer concluded that Smith appeared cognitively intact and "would be capable [of] full-time sedentary work exertion[.]" (Id.). Reliance determined that Smith no longer satisfied the policy's definition of Total Disability and subsequently terminated Smith's benefits, effective January 4, 2024. (AR624).

In March 2024, Dr. Ruberg continued to impose restrictions, noting that Smith could sit, stand or walk for no more than two hours total during an eight-hour workday. (AR3479). He also determined that Smith had limitations in reaching, handling, fine manipulation, and concentration, and stated that Smith would require a 10-minute break for every 15 minutes of work. (AR3479-80).

In June 2024, Dr. Ruberg reported that Smith's condition had "not changed in the past few years." (AR3534). He explained that any apparent improvement in Smith's condition was because she had learned to pace herself, not because her overall health had improved, and cautioned that her condition would worsen if she failed to maintain her restrictions. (Id.).

Smith appealed Reliance's termination on June 26, 2024. (Doc. 17-1 at ¶ II.12; AR3496-98). Reliance subsequently arranged for Dr. Jason Brokaw, M.D., a physical medicine and rehabilitation specialist, to perform an independent medical

examination. In September 2024, Dr. Brokaw determined, among other things, that Smith could sit continuously, stand and walk occasionally, and perform continuous fine manipulation and keyboarding. (AR3795). He explained Smith's physical and cognitive complaints "[did] not correlate to the benign nature of her objective studies, of which none showed significant post-traumatic findings in her body[.]" (AR3794). Dr. Brokaw recommended a functional capacity evaluation ("FCE") for Smith but noted that "[c]areful attention should be paid towards consistency of effort and symptom magnification findings, because of the discrepancies between her subjective and objective symptoms." (AR3794-95).

Stephen Uetz performed the FCE in November 2024. (AR3815-16). He concluded Smith's physical demand level was "Below Sedentary" and that she could sit for only five hours in 60-minute increments. (AR3816). He also determined she had a maximum workday tolerance of six hours and thus could not work a full eight-hour workday. (Id.) Dr. Brokaw questioned the FCE's validity because Uetz was apparently not a physical therapist, and recommended Smith undergo a second FCE. (AR3828).

Rachel Craig, P.T., performed the second FCE in January 2025. (AR3867-75). She noted several limitations regarding Smith's physical abilities, including visual, auditory, cognitive, and balance dysfunction as a result of her post-concussion syndrome. (AR3868). However, she also summarized Smith's performance during the testing as "invalid and inconsistent" and not a valid representation of her true physical abilities. (AR3867). After reviewing Craig's evaluation, Dr. Brokaw

reiterated his opinion that Smith was capable of at least sedentary-to-light physical demand work and that she was not totally disabled from the motor vehicle accident. (AR3897-98).

Reliance also arranged for a psychiatric review from Dr. M. Ashraf Ali, M.D. Dr. Ali concluded Smith did not have any medically necessary restrictions or limitations from a psychiatric perspective on or after January 4, 2024. (AR4030). Although he noted Smith continued to experience "somatoform features and significant psychosocial stressors," he determined there was insufficient evidence of functional deficits to justify restrictions and limitations. (AR4031). The policy defines mental or nervous disorders to include somatoform disorders and limits benefits for disability caused by such disorders to 24 months, a period that Smith had already exhausted by the time of Dr. Ali's review. (AR22).

On April 11, 2025, Reliance notified Smith's attorney by letter that it had upheld its decision to terminate her benefits. (AR653). The letter explained that Reliance had retained a Vocational Rehabilitation Consultant to determine what jobs, if any, Smith was able to perform. Based on Smith's restrictions and limitations, as well as her training, education, and experience, the consultant identified five occupations: administrative assistant, customer complaint clerk, data entry clerk, receptionist, and secretary. (AR656).

Smith commenced this action on April 22, 2025. (Doc. 1). The cross-motions for summary judgment are fully briefed and ripe for disposition. (Docs. 19, 21, 23, 24, 29, 30).

## II. Legal Standard

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

Courts may resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. FedEx, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the nonmoving party with respect to each motion. See FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

### B. ERISA Standard of Review

ERISA permits a beneficiary or plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

Under *de novo* review, "the role of the court 'is to determine whether the administrator . . . made a correct decision.'" Viera v. Life Ins. Co. of North America, 642 F.3d 407, 413 (3d Cir. 2011) (quoting Hoover v. Provident Life & Accident Ins. Co., 290 F.3d 801, 808-09 (6th Cir. 2002)). The administrator's decision can be "accorded no deference or presumption of correctness." Id. at 413-414. The court must review the record and "determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." Id. at 414.

*De novo* review, however, does not displace the requirements of Rule 56. Even when reviewing an administrator's decision *de novo*, a court may not resolve genuine disputes of material fact on summary judgment. See O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 117 (2d Cir. 2011).

A plaintiff proceeding against a plan under § 1132(a)(1)(B) has no right to a jury trial. See, e.g., Cox v. Keystone Carbon Co., 861 F.2d 390, 396 (3d Cir.1988); Pane v. RCA Corp., 868 F.2d 631, 637 (3d Cir. 1989). Where *de novo* review is required, the

court may resolve disputed factual issues at a bench trial pursuant to Federal Rule of Civil Procedure 52. See Laslavic v. Principal Life Ins. Co., No. 11-684, 2013 WL 254450, at *11 (W.D. Pa. 2013).

## III. Discussion

The parties agree that the policy does not confer discretionary authority to determine eligibility for benefits or construe the plan's terms. The court therefore review's Smith's claim *de novo*.[2]

Applying that standard, the court turns to the administrative record and the evidence both supporting and undermining Smith's claim for long-term disability benefits. As explained below, the record is far from clear and contains conflicting medical opinions and evidence. Resolving Smith's entitlement to benefits requires the court to assess the credibility of those opinions and weigh the evidence, both of which are factfinding tasks that Rule 56 does not permit. See Fed. R. Civ. P. 56(a). Accordingly, genuine disputes of material fact preclude summary judgment for either party.

The parties principally dispute whether Smith's condition improved before Reliance terminated her benefits[3] and whether she remains capable of performing

---

[2] Smith initially argued that the arbitrary and capricious standard applies (see Docs. 17 ¶ 8; 19 at 4) but subsequently agreed, in opposition to Reliance's motion for summary judgment, that the policy does not confer discretionary authority upon Reliance and that the appropriate standard of review is *de novo*. (Doc 24 at 1). Accordingly, the court reviews Smith's claim *de novo*.

[3] As an initial matter, Smith contends that Reliance must "point to some improvement" in her condition before reversing its prior determination that she was Totally Disabled within the meaning of the policy. (Doc. 19 at 5). The court disagrees. Although Reliance's prior determination is relevant, it does not alter the terms of the

sedentary work. Both questions are relevant, but neither resolves Smith's claim. After the first twenty-four months of benefits, the policy expressly considers an insured "Totally Disabled" if she can perform the material duties of an otherwise qualifying occupation only on a part-time basis. (AR10). Therefore, the threshold question is whether Smith can perform the material duties of a qualifying occupation *full-time*.

Courts applying *de novo* review have declined to resolve ERISA disability claims on summary judgment where competing medical assessments create factual disputes material to determining continued disability. See, e.g., O'Hara, 642 F.3d at 117; Laslavic, 2013 WL 254450, at *14; Weisner v. Liberty Life Assurance Co. of Bos., 192 F. Supp. 3d 601, 619 (D. Md. 2016).

Here, the record contains materially conflicting medical opinions and evidence on the issue of whether Smith is capable of performing full-time work. In December 2023, a Reliance reviewer concluded that Smith appeared cognitively intact and "would be capable [of] full-time sedentary work exertion," while Dr. Ruberg limited her to four hours of work per day. (AR126; AR3387). The evidence developed during the administrative appeal was no clearer. Dr. Ruberg found that Smith's condition had not changed in several years and attributed her apparent improvement to pacing

---

policy, which govern Smith's entitlement to benefits. See Shaver v. Siemens Corp., 670 F.3d 462, 471 (3d Cir. 2012) (explaining that "[o]nly the plan itself can create an entitlement to benefits.") (citation omitted). After the initial two-year period prescribed by the policy, Smith was entitled to continuing benefits only if she continued to satisfy the policy's "Any Occupation" definition of Total Disability. (AR10). Thus, Reliance was not required to demonstrate medical improvement before terminating Smith's benefits.

her activities. (AR3479-80; AR3534). Dr. Brokaw, by contrast, concluded Smith was capable of at least sedentary work, while Dr. Ali found insufficient evidence of psychiatric limitations warranting work restrictions. (AR3794-95; AR4030-31). The FCE evidence was similarly conflicting: Uetz assessed a maximum workday of six hours, while Craig found inconsistent results that did not reliably reflect Smith's actual abilities. (AR3816; AR3867).[4]

These competing medical assessments cannot be resolved at the summary judgment stage. Viewed in Reliance's favor, the December 2023 assessment of full-time sedentary work capacity, Dr. Brokaw's opinions, and the deficiencies identified in the FCE report would permit a reasonable factfinder to conclude that Smith retained full-time work capacity. Viewed in Smith's favor, Dr. Ruberg's four-hour work limitation, his subsequent assessments of her physical abilities, and Uetz's six-hour maximum workday would permit a reasonable factfinder to conclude that Smith could only sustain work on a part-time basis.

That dispute is material. The policy expressly considers an insured Totally Disabled if she can perform the material duties of a qualifying occupation only on a part-time basis. (See AR10). Resolving whether Smith is entitled to benefits requires

---

[4] Smith also relies on the Social Security Administration's determination that she was disabled as evidence that she remained Totally Disabled under the policy. (Doc. 19 at 14). Although relevant, the SSA's determination is not dispositive of Smith's entitlement to benefits under the policy. See, e.g., Burk v. Broadspire Servs., 342 Fed. App'x 732, 738 (3d Cir. 2009); Moats v. United Mine Workers of Am. Health & Ret. Funds, 981 F.2d 685, 689 n.3 (3d Cir. 1992). Instead, the court must independently determine whether Smith satisfies the policy's definition of Total Disability. See Viera, 642 F.3d at 413.

the court to weigh competing medical evidence and make credibility determinations, which Rule 56 does not permit. See, e.g., Laslavic, 2013 WL 254450, at *13; O'Hara, 642 F.3d at 117.

Further, the parties dispute whether Smith's physical limitations and vocational skills preclude her from performing the occupations identified by Reliance. Smith argues that she cannot perform the functional requirements of those occupations and that Reliance's vocational assessment failed to adhere to its own methodology for evaluating transferable skills. (Doc. 19 at 11-13). Reliance responds that Smith forfeited her objections by failing to raise them during the administrative process. (Doc. 23 at 2-3).

The Third Circuit has held that ERISA requires exhaustion of claims, not every issue or theory supporting those claims. See Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 186 (3d Cir. 1984). Smith exhausted her benefits claim by appealing Reliance's determination, which Reliance subsequently affirmed. (AR3496-98; AR653-56). Her objections to Reliance's vocational assessment concern that same claim for benefits. Therefore, her failure to raise specific objections during the administrative process does not, standing alone, preclude her from advancing those arguments here.

Smith's functional capacity and her ability to perform the material duties of an occupation reasonably permitted by her education, training, or experience are central to determining whether she remains "Totally Disabled" under the policy. (AR10). The parties dispute both matters, and resolving the conflicting medical evidence would

require the court to make credibility determinations impermissible on summary judgment. Accordingly, genuine disputes of material fact preclude summary judgment for either party.

## IV. Conclusion

For the foregoing reasons, both parties' motions for summary judgment will be denied. The remaining factual disputes will be resolved at a bench trial pursuant to Federal Rule of Civil Procedure 52. An appropriate order follows.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated: November 17, 2026